KENNETH A. EVANS et al., Trustees Emerson State Bank, Appellants, v. WAYNE COLE et al., Appellees.

No. 44210.

August 5, 1938.

Rehearing Denied December 16, 1938.

758

Cook & Cook and Clifford E. Powell, for appellants.

Keenan, Clovis & Sar, for appellees.

SAGER, C. J.—As has been stated the testator's name was Eleazar Cole, and the son around whose transactions this case

revolves was Ernest E. Cole. To avoid confusion, we shall, throughout this opinion when speaking of these two, refer to the testator as the father and to Ernest E. Cole as the son. The other appellees are legatees and devisees under the will of the father.

The trial court filed a decree in which the lengthy and rather involved record is carefully analyzed. We have compared it with the record itself and find it sustained by such portions thereof as will give a rather comprehensive outline of what the controversy is about.

On the 19th day of April 1930, the father was owner of 560 acres of land in Mills county, and of considerable personal property, among which appeared the note and mortgage of one Cheney, vice-president and managing officer of appellants' assignor. In the personal property then possessed by the father was a note of his son Ernest, in the principal sum of $3,140. At the date mentioned the father had already executed a will and two codicils which devised to his children certain tracts of real estate and bequests in cash. To the son Ernest he devised a tract of real estate and made a bequest in his favor of $11,000 cash. The rest of the estate he disposed of in five equal parts to the devisees named. On the day mentioned the son was indebted to the Emerson State Bank in the sum of $10,000. On that date the father and the son made a contract with the bank wherein it was recited, by way of preamble, that the father had previously made his will giving his son the sum of $10,000 in money and 80 acres of land, to be effective on the death of the father; and the further fact that the son was indebted to the bank in the sum of $9,550 on a note or notes, which he was then unable to pay. The contract provided:

"Now, therefore, in consideration of the Emerson State Bank party of the second part, extending said promissory note or notes of the said Ernest E. Cole from time to time, and carrying said indebtedness until the death of the said Eleazar Cole, the said Eleazar Cole agrees not to change or modify said bequest of $10,000 to his son Ernest E. Cole, as above set out, and the said Ernest E. Cole hereby assigns and sets over to the said Emerson State Bank all his right, title and interest, now or hereafter to be acquired, in and to the said Ten Thousand Dollar bequest, made in the will of the said Eleazar Cole, and hereby authorizes the said Emerson State Bank to receive and receipt for the same

to the extent that he shall be owing said bank at the time of his father's death. And the said Emerson State Bank agrees to extend said note or notes and carry said indebtedness until the death of the said Eleazar Cole."

On the 14th of May 1930, the son gave to the bank a note of $10,000 in renewal of the one referred to in the contract, and then gave another note to the managing officer of the bank for $1,850. As the result of various transactions the son was indebted to his father at the time of the latter's death in the sum of $5,630.54.

During the summer of 1936 the father conveyed to the devisees named in his will the tracts of land which had theretofore been devised in the will which was in existence at the time of making the contract above set out. At about the same time the father transferred to his children and grandchildren his personal property, and certain real estate consisting of 197 acres in Adams county which he had acquired after the execution of the contract, in a settlement with the managing officer of the bank. The aggregate value of the personal property disposed of at that time, with the real estate in Adams county, was $27,420. In this transfer of personal property and the land in Adams county the son Ernest received no part. No consideration was paid by the grantees of the father for any of the conveyances, nor for the transfer of any personal property, all such transfers being voluntary.

When the father died in December 1936, his son Ernest was owing the debt spoken of above. The father also had cash in a savings bank, $946.82; and a trust certificate as a depositor of the Emerson State Bank in the amount of $4,056.42, which was issued to him when the bank was reorganized under S. F. 111 of the Forty-fifth General Assembly.

It is appellants' contention that the contract above set out and referred to in the record as Exhibit 2, resulted in an implied or constructive trust in favor of appellants against all the property owned by the father, to the extent of $10,000; and that such trust was irrevocably impressed upon all property which the father had assumed to transfer.

As the trial court found, the case turns on the construction of the contract Exhibit 2. At the time of its execution the father had made a bequest to the son Ernest in the sum of $10,000 and devised 80 acres of real estate. The effect of the con-

tract, as the trial court found it to be and as we agree, was that the father contracted not to change his will in so far as it related to the cash bequest to the son Ernest. He did not agree that, regardless of any future circumstances, at his death he would leave $10,000 to his son Ernest; nor may the contract be construed as an undertaking to nullify the other provisions of the will then in existence.

The industry and learning of counsel have led to the citation of a very large number of cases, which it is impossible, as well as unnecessary, to scrutinize in detail. The attorneys have devoted a large part of their arguments to the discussion of propositions which, while sound in themselves, have no direct bearing on the result to be attained in the case before us.

The first contention made by appellants in argument is that it is now too well settled to be open to question that a person may enter into a valid contract binding himself to make a particular disposition of his property by last will, when founded upon a valid consideration and not against public policy. Appellees do not contest this proposition. An admission of its soundness lends no support to appellants' cause. The contract here is not to make a will bequeathing specific property to a named legatee. Its obligation was to leave a will as it then was.

As a part of the same division of appellants' brief it is urged that the agreement Exhibit 2 created a trust against all property of the testator, and that all devisees, legatees, grantees, donees, and heirs of the father were trustees of all the property received by them to assure payment of the note held by the bank. Many authorities are cited. No Iowa case sustains the contention with reference to the alleged trust.

The second division of appellants' argument is, in effect, the same as the first, stated a little differently. This ground urges that a contract not to change a will is just as valid and binding, if made under the same conditions, as a contract to make a will in the future. This is not in the controversy here and we have found none of our decisions which deals with a case like this. In this division appellants complain of the action of the trial court in using this language in its decree:

"The situation is not one where he contracted and agreed to make a will and therein give to his son, Ernest E. Cole, the sum of $10,000.00, regardless of the condition of the estate at

his death, but is a contract wherein he agreed not to change or modify the will theretofore made."

They say that the court was confused as to the law in such a case, but a reference to the record discloses that the court is sustained in making this statement.

Division 3 proceeds on the assumption that because the other terms of the will were not divulged or made known to the bank the father impliedly contracted and warranted that he would leave such a will as would make available $10,000 for the payment of the son's indebtedness. This branch of appellants' argument continues with the claim:

"Equity *should* enforce the contract and *should* give it such construction as will accomplish the purpose intended by it. The contract, not the will, controls the liability." (Italics ours.)

This begs the question. We are not impressed by the inference sought to be conveyed that the bank was ignorant of the contents of this will, but it would serve no purpose to point out that part of the record on that subject which leaves the writer hereof unconvinced. In support of this division of the argument are citations from 6 R. C. L., secs. 225-226, and 13 C. J., sec. 481. A glance will show that these references deal with general principles not seriously in dispute.

Division 4 of appellants' argument proceeds on the assumption that the father contracted to leave the son $10,000 for the purpose of paying the indebtedness to the bank (something that the contract did not undertake to do), and to subordinate his own claim against his son to that of the bank. Therefore, appellants say, the heirs-at-law and legal representatives of the testator are estopped from claiming that the son's indebtedness be deducted from any bequest payable to him under the terms of the will. We are at a loss to understand upon what theory the doctrine of estoppel could possibly be applied to the situation before us. No cases are cited in its support and we think none can be found.

Division 5 argues that under the doctrine of unjust enrichment a court of equity will require a restitution of property unjustly obtained, and will establish a trust or lien thereon. This contention finds no support in the record, nor in the Iowa cases cited. It should be kept in mind that the undertaking of the testator was not to leave any certain or specific property to

the bank for any purpose whatsoever, or to rewrite the devises then in the existing will so that the bank might be secure, but only that the will as then written should not be changed. This was upon the consideration stated in Exhibit 2 that the bank would "carry" the son Ernest while the father lived. We can see no "unjust enrichment" of devisees and legatees who accept property willed to them by the owner thereof under circumstances like those before us.

The sixth division says the decision of the trial court places a premium on fraud and dishonesty and is grossly unconscionable. We do not read the record to any such conclusion; and the case of Kuehl v. Parmenter, 195 Iowa 497, 192 N. W. 429, cited to that proposition, does not require it. Further elaboration is unnecessary.

The seventh and last division is to the effect that appellees were not bona fide purchasers of the property received by them, having paid no consideration whatever therefor. It is a strange doctrine that heirs and devisees are required to give a consideration for devises and bequests to them. Such a contention calls for the application of principles which seem not to have been applied by the courts.

Appellees undertake to meet the contentions of appellants, not in the terms in which they are stated in the brief, but along general lines which they conceive applicable to the nature of the case. For instance, in division 1 of their argument they say that The Emerson State Bank, by the terms of the contract Exhibit 2, agreed to "carry" the indebtedness of the son until the death of the father, and to make extensions of the son's obligation from time to time as occasion required. This it did not do but, on the contrary, it placed it out of its power to perform when it transferred the son's note and the contract, exhibit 2, to appellant trustees.

In support of the first division of appellees' argument are cited many authorities, two only of which will be referred to herein.

One is Hounchin v. Salyards, 155 Iowa 608, at page 613, 133 N. W. 48, at page 49, which, on one branch of the case was an action to recover deferred payments on a contract to convey real estate. This was met by a plea in abatement that as a condition precedent to recovery title must be perfected in the plaintiff. The court has this to say:

764

"Had the Salyards (defendants) retained the land, there might have been some ground for insisting upon the terms of the contract. * * *

"But as seen, they had sold and conveyed the land by quit-claim deeds, with the stipulation that they be kept from harm, and thereby rendered themselves powerless to perform their part of the contract; that is, to execute the mortgage. That their grantee promised to do so affords no excuse. This was not binding on the plaintiff. He in no manner consented or acquiesced in such arrangement, and, this being so, was not required to accept the obligation of Ethel Hounchin or of anyone else in lieu of that of J. W. and Eudura Salyards."

The other case to which we refer is Davis v. Bremer Co. Fire Ins. Assn., 154 Iowa 326, at page 331, 134 N. W. 860, 862. We there said:

"We find nothing in our statutes or decisions inconsistent with the continued recognition of the general rule of law that personal contracts, executory in their nature and involving relations of trust and confidence, are not assignable by one party thereto without the consent of the other."

Appellants argue strenuously that the contract was not personal and that assignment to them in nowise breached the contract. With this we cannot agree. Assuming, without deciding, that these trustees were associated with the reorganized bank in such capacity that they were fully cognizant of the details of the transaction, the record abundantly establishes that from the time of the reorganization under S. F. 111, chapter 156 of the Acts of the Forty-fifth General Assembly they had no legal connection with the bank, and they were under no obligation whatever—at least they so construed it when they started suit in the lifetime of the testator—to carry out the agreement to "carry" the son. Appellants argue that when the suit was originally started for a money judgment the testator might have interposed as a defense the contract; but he was not obligated to do so, nor was he required to take such action as the trustees now wish he had to protect their debt.

Appellees next urge that since the father had no consideration other than the agreement of the bank to deal leniently with the son Ernest until the father died, he was in a position to dictate

the terms on which he would enter into a contract which, as appellees claim, put him in the position of surety. Without deciding that the relation was that of a surety, it is so self-evidently true that the father could make any terms he chose that we pass this division without further notice.

Appellees further contend that by reason of the failure of both the Emerson State Bank and the appellant trustees to perform their undertakings as set out in Exhibit 2, the testator was released from the obligations of his contract. These obligations, reduced to their essence, are: First, to extend the note or notes of the son; and, second, to carry the indebtedness of the son until after the death of the father. The second of these undertakings was clearly not carried out and justifies the appellees' contention in this regard.

The fourth division of appellees' argument states a commonplace of equity jurisprudence which needs no argument to support it. It reads:

"Plaintiffs, asking relief in equity, must show a full performance of the contract on their part."

It is not necessary to consider nor to decide appellees' contention that appellants, having first started an action for damages, made such an election of remedies as to foreclose against their present contention, and we do not do so.

Neither is it necessary to pass on the question whether the courts will or will not enforce testamentary agreements dealing with specific personal property; nor to analyze those cases in which there has been a full performance on the part of one of the contracting parties, and in which protection is sought by action *quia timet*. No such situation is before us.

Other contentions are urged by appellees in support of the decree below, and all have been examined. But this opinion has already been extended beyond reasonable length. It is sufficient to say that a careful examination of the entire record justifies and sustains the decree appealed from. It is, therefore, affirmed. —Affirmed.

KINTZINGER, RICHARDS, ANDERSON, JJ., concur.

HAMILTON, J., concurs in result.

MILLER, J., takes no part.